IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
TYLER DIVISION

| | | |
|---|---|---|
| JOANN HARRIS, | § | |
| | § | |
| Plaintiff, | § | CIVIL ACTION NO. 6:16-CV-00403-JDL |
| | § | |
| v. | § | |
| | § | |
| COMMISSIONER OF SOCIAL SECURITY ADMINISTRATION, | § | |
| | § | |
| Defendant. | § | |

## MEMORANDUM OPINION AND ORDER

On May 9, 2016, Plaintiff Joann Harris ("Plaintiff") initiated this civil action pursuant to the Social Security Act ("The Act"), Section 205(g) for judicial review of the Commissioner's denial of Plaintiff's application for Social Security benefits. Pursuant to 28 U.S.C. § 636(c), both parties consented to the undersigned for the disposition of this matter. Plaintiff has filed an opening brief (Doc. No. 15), the Commissioner filed a responsive brief. (Doc. No. 16) For the reasons stated below, the Court affirms the Commissioner's denial of benefits.

### I. BACKGROUND

Plaintiff filed five previous Title II and Title XVI applications for a period of disability and disability insurance benefits, including onset dates of April 1, 2010, January 31, 2006, March 15, 2003, and July 3, 1985. *See* Transcript ("Tr.") at 36 (Administrative Law Judge (ALJ) Decision). Four of the claims were initially denied. *Id.* One claim was initially allowed but then terminated due to income and resources with an assessed overpayment of $3,274.32. *Id.* Plaintiff filed the instant Title II application on May 31, 2013 for a period of disability and disability insurance benefits beginning on January 1, 2013. *Id.* The claim was initially denied

on July 26, 2013, and on denied on reconsideration October 1, 2013. *Id.* The Plaintiff sought review of the denial at an administrative hearing conducted before the ALJ on October 24, 2014. *Id.* at 36, 66–107 (hearing transcript). Plaintiff appeared and testified, represented by counsel. *Id.* A vocational expert, Dr. Weber, also testified. *Id.*

The ALJ issued an unfavorable decision on July 23, 2015, *Id.* at 33, and Plaintiff sought review. On March 17, 2016, it was denied. *Id.* at 1–6. Therefore, the ALJ's decision became the Commissioner's final decision. *See Sims v. Apfel*, 530 U.S. 103, 106–07, 120 S. Ct. 2080, 147 L. Ed. 2d 80 (2000). Plaintiff has filed the instant action for review by this court.

## II. STANDARD

Title II of the Act provides for federal disability insurance benefits. Under section 205(g) of the Act, 42 U.S.C. § 405(g), judicial review of the denial of disability benefits is limited to "determining whether the decision is supported by substantial evidence in the record and whether the proper legal standards were used in evaluating the evidence." *Homan v. Comm'r of Soc. Sec. Admin.*, 84 F. Supp. 2d 814, 818 (E.D. Tex. 2000) (quoting *Bowling v. Shalala*, 36 F. 3d 431, 434 (5th Cir. 1994) (per curiam)). A finding of no substantial evidence is only appropriate where there is a conspicuous absence of credible choices or no contrary medical evidence. *Id.* The Court "may not reweigh the evidence in the record, nor try the issues *de novo*," and is not allowed to substitute its judgment for the Commissioner's judgment. *Id.* (quoting *Bowling*, 36 F.4d at 435). Conflicts in evidence are for the commissioner to decide. *Id.* (citing *Spellman v. Shalala*, 1 F.3d 357, 360 (5th Cir. 2993)); *see Selders v. Sullivan*, 914 F.2d 614, 617 (5th Cir. 1990). However, it is important to note the court must do more than "rubber stamp" a decision by the ALJ, it must "scrutinize the record and take into account whatever fairly detracts from the substantiality of evidence supporting the [Commissioner]'s findings." *Cook v. Heckler*, 750 F.2d 391, 393 (5th Cir. 1985) (internal quotation omitted).

"Substantial evidence is more than a scintilla but less than a preponderance— that is, enough that a reasonable mind would judge it sufficient to support the decision." *Brown v. Astrue*, 344 Fed. Appx. 16, 18–19 (5th Cir. 2009) (citing *Pena v. Astrue*, 271 Fed. Appx. 382, 383 (5th Cir. 2003)). Substantial evidence includes four factors: (1) objective medical facts or clinical findings; (2) diagnoses of examining physicians; (3) subjective evidence of pain and disability; and (4) the plaintiff's age, education, and work history. *Id.* at 19 (citing *Fraga v. Bowen*, 810 F.2d 1296, 1302 n. 4 (5th Cir. 1987)).

Claimant has the burden for proving disability. *Id.* (citing *Wren v. Sullivan*, 925 F.2d 123, 125 (5th Cir. 1991)). A disability is an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 416(I)(1)(A); 42 U.S.C. § 423(d)(1)(A). The Commissioner uses a five step sequential process to determine if the claimant is disabled, and finding "disabled" or "not disabled" at any step of the sequential process ends the inquiry. *Villa v. Sullivan*, 895 F.2d 1019, 1022 (5th Cir. 1990). Step One determines whether the claimant is actually engaged in any "substantial gainful activity." At Step Two, the Commissioner determines whether the claimed physical and/or mental impairments are "severe." At Step Three, the Commissioner determines whether the claimant has an impairment or combination of impairments that meet or equal one of the listings in Appendix I. This step also involves determining the claimant's Residual Functional Capacity ("RFC"), or the most that the claimant can do given her impairments, both severe and non-severe. Step Four determines whether the claimant is capable of performing her past relevant work. Finally, Step Five determines whether the claimant can perform other work available in the local or national economy. 20 C.F.R. § 404.1520(b)-(f). An

affirmative answer at Step One or negative answer at Steps Two, Four, or Five results in a finding of "not disabled." *Villa*, 895 F.2d at 1022. An affirmative answer at Step Three, or an affirmative answer at Steps Four and Five, creates a presumption of disability. *Id.* The burden of proof is on the claimant for the first four steps, but Shifts to the Commissioner at Step Five if the claimant shows that she cannot perform her past relevant work. *Anderson v. Sullivan*, 887 F.2d 630, 632–33 (5th Cir. 1989) (per curiam).

## III.  ADMINISTRATIVE LAW JUDGE'S FINDINGS

The ALJ made the following findings in his July 23, 2015, decision:

1. The claimant meets the insured status requirements of the Social Security Act through September 30, 2018 [20 CFR 404.1571, *et seq.*, and 416.971, *et seq.*].

2. The Claimant has not engaged in substantial gainful activity since January 1, 2013, the alleged on-set date [20 CFR 404.1520(c) and/or 416.920(c)].

3. The claimant has the following severe impairments: obesity, degenerative disc disease of the lumbar spine, degenerative joint disease of the knees (right knee worse than left), uncomplicated type II diabetes mellitus, moderate to severe obstructive sleep apnea requiring use of a continuous positive airway pressure machine and asthma [20 CFR 404.1520(c)].

4. The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 [20 CFR 404.1520(d), 404.1525, 404.1526, and/or 416.920(d), 416.925, and 416.926].

5. The claimant has the physical residual functional capacity to perform light work (lift/carry 20 pounds occasionally and 10 pounds frequently). Claimant can stand/walk for about 6 hours in an eight-hour workday, and/or sit for about six hours in an eight-hour workday. Claimant is not limited in pushing or pulling (including the operation of foot and/or hand controls) with the upper and lower extremities. Claimant can occasionally balance, stoop, crouch, kneel, crawl and climb ramps/stairs but may never climb ropes, ladders or scaffolds.

6. The claimant is unable to perform past relevant work as a certified nurse's aide. This work requires the performance of work-related activities precluded by the claimant's residual functional capacity [20 CFR 404.1565 and 416.965].

7. The claimant was born on March 22, 1962 and was 50 years old, which is defined as an individual closely approaching advanced age, on the alleged disability onset date, and 52 years of age at the time of the hearing [20 CFR 404.1563 and 416.963].

8. The claimant has at least a high school education and is able to communicate in English [20 CFR 404.1564 and 416.964].

9. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform [20 CFR 404.1569 and 404.1569(a)].

10. The claimant has not been under a disability, as defined in the Social Security Act, before or after (date), through the date of this decision [20 CFR § 404.1520(g), 404.1512(g), 404.1560(c), and/or 416.920(g), 416.912(g) and 416.960(c)].

(Tr. at 38, 39, 47, 50, 54, 55, 56) The ALJ determined that Plaintiff was not disabled under sections 216(i) and 223(d) of the Social Security Act. *Id.* at 56.

## IV. DISCUSSION AND ANALYSIS

The ALJ found that Plaintiff had a number of severe impairments. Although Plaintiff argued that she also had severe mental impairments, the ALJ concluded that such impairments were "non-severe." Plaintiff's arguments to this Court focus only on the ALJ's mental impairment finding.

Plaintiff asserts five issues: 1) the ALJ failed to use a proper legal standard when assessing her mental impairments; 2) her medical history did not support a finding that her mental impairments were non-severe; 3) the ALJ failed to take a finding of severe mental impairments into account in its RFC, and this would have affected what jobs were available under step five; 4) even if her mental impairments are only non-severe, they still should have been taken into consideration in the ALJ's RFC; and 6) the ALJ had a flawed credibility analysis because it failed to take into consideration her strong work history.

### A. ALJ's Legal Standard

5

Plaintiff maintains her mental impairments were not analyzed under the Fifth Circuit standard set forth in *Stone v. Heckler*, 752 F.2d 1099 (5th Cir. 1985). *Stone v. Heckler* finds an impairment is "not-severe" only if it has minimal effect on an individual and it is not expected to interfere with the person's ability to work, irrespective of age, education or work experience. 752 F.2d at 1101. Courts in the Fifth Circuit find that ALJs should verify they used the *Stone* standard when applying step two. *Loza v. Apfel*, 219 F. 3d 378, 392–93 (5th Cir. 2000); *Oliver v. Commissioner, Soc. Sec. Admin.*, No. 2:14-cv-01016, 2016 WL 1237427, at *1 (E.D. Tex. Mar. 30, 2016). Plaintiff argues that the ALJ failed to cite to *Stone* and did not analyze her mental impairments under this standard.

An ALJ's failure to cite *Stone* in concluding mental impairments are "non-severe," does not necessarily mean the ALJ failed to account for all of a claimant's impairments. *See Oliver*, 2016 WL 1237427, at *1 ("[T]he Fifth Circuit instructed that an ALJ should verify that he or she properly considered the severity of an impairment by either setting forth the *Stone* standard or citing to *Stone* or a similar case"). Further, "the Fifth Circuit has held that the court must remand 'only where there is *no indication* the [final decision] applied the correct standard.'" *Merrell v. Commissioner, Soc. Sec. Admin.*, No. 6:12-cv-393, 2013 WL 5496783, at *5 (E.D. Tex. Oct. 1, 2013) (citing *Hampton v. Bown*, 785 F.2d 1308, 1311 (5th Cir. 1986)). Here, the ALJ noted that under step two legal analysis, "[a]n impairment or combination of impairments is 'not severe,' only if it is a slight abnormality having such minimal effect on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education or work experience." (Tr. at 37) This is the precise standard of *Stone*, and the ALJ stated multiple times he took all of Plaintiff's impairments into consideration (Tr. 38, 50–54)

6

Further, the ALJ applied the *Stone* standard by analyzing Plaintiff's medical history against the regulations for mental impairments to see if her impairments were severe. (Tr. 46); *see* 20 C.F.R. 404.1520a; 20 C.F.R. 416.920a. The regulations look at 1) activities of daily living, 2) social functioning, 3) concentration, persistence or pace, and 4) deterioration or decompensation in work or work-life settings. (Tr. 46) Under the first factor, that ALJ noted her limitations were mild because she was able to shop for herself, live alone, drive short distances, and entertain herself with the computer, television, and reading. *Id.* She had good social functioning because she maintained relationships with her children and family, her church, and her friends. *Id.* The ALJ noted Plaintiff had mild limitations in concentration, analyzing doctor's statements that Plaintiff had good insight, Plaintiff's admissions she was good at written instructions and "okay sometimes" at spoken instructions, and because Plaintiff was able to play various games. *Id.* Finally, the ALJ found she showed no episodes of decompensation or extended duration in limitations because she had few therapy sessions and did not require inpatient psychiatric attention. (Tr. 46–47) Although the ALJ did not explicitly cite to *Stone*, he applied the *Stone* standard in finding that Plaintiff's mental impairment were not severe.

**B. Plaintiff's Medical History**

Plaintiff argues in her motion that her medical history does not support finding her mental impairments are non-severe. The burden is on Plaintiff to show she had a medically determinable impairment that qualifies as severe in step two. *Id.* at *5 (citing *Carey v. Apfel*, 230 F.3d 131, 135 (5th Cir. 2000); 20 C.F.R. § 404.1512(a)). Plaintiff relies on various medical notes as proof of her severe mental impairments. (Dkt. No. 15, pg. 5–8) Her treatment notes show she was medicated and treated in October 2013 at a crisis center and "felt like she was going crazy." *Id.* Plaintiff notes she was treated in February 2014 for headaches, depression,

and anxiety, as well as in June 2014 for depression and difficulty concentrating. *Id.* at 6–7. She had high GAF scores of 48 and 49 in August 2014 and October 2014. *Id.* at 8. A GAF score of 40 denotes "some impairment," while a GAF score of 50 shows "serious symptoms." *Id.* at n. 5. On September 4, 2013, Plaintiff indicates her treating doctor stated she had a depressive disorder and was positive for poor judgment and only a fair ability to relate to others or respond to change.[1] *Id.* (citing Tr. 435, 437–38).

Although Plaintiff highlights portions of her medical records indicating mental impairments, the ALJ thoroughly analyzed the medical history and relied on countering evidence in determining that her impairments were not severe. (Tr. 44–47) The ALJ noted claimant had reports of a depressed mood on May 30, 2014 with various emotional symptoms ranging from anger to sadness to panic. (Tr. 44) A case worker evaluated her and found her she did not need state services, she seemed be dressed appropriately, and Plaintiff only requested more sessions for further treatment. *Id.* She saw the therapist again on June 30, 2014, with symptoms of depression and issues with sleeping. *Id.* Plaintiff saw another professional counselor on August 14, 2014 where she appeared neatly dressed but noted fleeting suicidal ideation and struggles with depression. *Id.* The counselor gave her some coping tools, but Plaintiff came back August 8, 2014 with worsening levels of depression where she would not leave her room and could not quit crying. *Id.* She was given some behavioral activation tools and reported improvement September 12, 2014. *Id.* The therapist noted on this day she was coping better. *Id.* Plaintiff rated her mood as a five on October 1, 2014, where she had normal insight and judgment. (Tr.

---

[1] Medical records indicated Plaintiff "did not display poor judgment," had "fair to good" ability to relate to others and to sustain work. (Tr. 437–38) She did have fair ability to respond to stress and change at work. *Id.* These medical records include a checklist from her treating physician that she did not "have a mental condition that imposes more than minimal limitations." (Tr. 435)

45–46) The ALJ analyzed this medical history and decided there was substantial evidence her mental impairments were non-severe.

Plaintiff has failed to show the ALJ did not consider her medical history when he made his determination. The ALJ considered her mental history and found evidence her doctors thought she was coping and was not severely limited. Although there is conflicting evidence in the record, the Court must not reweigh the evidence or try issues *de novo*. *Thomas v. Colvin*, 587 Fed. Appx. 162, 163 (5th Cir. 2014). There is substantial evidence in the record supporting the ALJ's determination and, therefore, Plaintiff's second issue is without merit.

### C. The ALJ's RFC Analysis

Plaintiff argues that the ALJ failed to consider her severe mental impairments when creating her RFC, and that even if her depression was "mild," the ALJ still erred because it failed to consider all her impairments when it created the RFC. (Dkt. No. 15) An ALJ must take into account all medically determinable impairments in its RFC analysis. 20 C.F.R. §§ 404.1545(a)(2), 404.1645(e). The ALJ uses the Medical-Vocational Guidelines to determine if exertional impairments lead to a disability finding in its RFC, but must look past the these guidelines if the claimant suffers from a non-exertional impairment that significantly affects the person's functional capacity. *Crowley v. Apfel*, 197 F.3d 194, 199 (5th Cir. 1999). Typically, courts rely on expert vocational testimony or similar evidence to help analyze non-exertional impairments in the RFC. *Id.*

As noted above, there is no evidence in the record that Plaintiff's mental impairments are severe. Therefore, the ALJ was not required to consider a severe mental impairment finding in the RFC. Although Plaintiff argues the ALJ should have questioned the vocational expert about her non-severe mental limitations, that is not required if "h[er] non-exertional impairments do

9

not significantly affect [her] residual functioning capacity." *Fraga v. Bowen*, 810 F. 2d 1296, 1304 (5th Cir. 1987); *see also Crowley*, 197 F. 3d at 199. Here, the ALJ properly found her mental impairments were not severe enough to have any effect on her work, and therefore do not significantly affect her residual functioning capacity. The ALJ was not required to take them into consideration in its RFC analysis.

Even if the ALJ was required to question the vocational expert about Plaintiff's mental limitations and failed to do so, it is not reversible error. If an ALJ fails to question about a recognized limitation, it is only reversible if the claimant or the claimant's representative does not have a chance to correct or suggest changes to any deficiencies in the ALJ's questions. *Wise v. Barnhart*, 101 Fed. Appx. 950, 951 (5th Cir. 2004); *see Quintilla v. Astrue*, 619 F. Supp. 2d 306, 323 (S.D. Tex. 2008) (citing *Bowling v. Shalala*, 36 F. 3d 431, 436 (5th Cir. 1994)). The ALJ's questions do not result in reversible error because Plaintiff's representative did cross examine the vocational expert and could have asked about Plaintiff's mental limitations. Therefore, the ALJ's hypothetical questions do not constitute reversible error.

### D. Plaintiff's Credibility

Plaintiff asserts the ALJ failed to take into account her strong work history when analyzing her credibility, and asks to remand the case to consider this factor. An ALJ uses credibility determinations where medical evidence is inconclusive. *Nickerson v. Sec'y of Health & Human Servs.*, 894 F. Supp. 279, 283 (E.D. Tex. 1995). The ALJ is entitled to considerable deference in determining this factor. *Broadnax v. Barnhart*, 54 Fed. Appx. 406, No. 02-50155, 2002 WL 31688935, at *2 (5th Cir. Oct. 29, 2002) (per curiam).

The ALJ in its analysis called into question Plaintiff's credibility by comparing her statements and symptoms against the objective medical evidence. *See Anthony v. Sullivan*, 954

F. 2d 389, 296 (5th Cir. 1992) ("[S]ubjective evidence need not be credited over conflicting medical evidence"). Although a person's work history can be a factor, an ALJ is not required to look at every guiding factor in showing its reasons for weighing credibility. *Clary v. Barnhart*, 214 Fed. Appx. 379, 482 (5th Cir. 2007) (citing *Falco v. Shalala*, 27 F.3d 160, 163 (5th Cir. 1994)). The ALJ properly analyzed Plaintiff's credibility according to medical records and was not required to analyze credibility on the basis of her work history.

V.  **CONCLUSION**

For the foregoing reasons, the Court **AFFIRMS** the decision of the Commissioner and dismisses Plaintiff's Complaint with prejudice.

**So ORDERED and SIGNED this 14th day of August, 2017.**

JOHN D. LOVE
UNITED STATES MAGISTRATE JUDGE